**STATE of Tennessee, Appellee,**

v.

**Ricky C. CONATSER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 27, 1997.

Permission to Appeal Denied by Supreme Court Dec. 8, 1997.

John E. Appman, Jamestown, for Appellant.

Charles W. Burson, Attorney General and Reporter, Daryl J. Brand, Asst. Attorney General, Nashville, William Paul Phillips, District Attorney General, John W. Galloway, Jr., Asst. District Attorney General, Jamestown, for Appellee.

### *OPINION*

PEAY, Judge.

The defendant was indicted for possessing tylox capsules, containing oxycodone, a schedule II controlled substance, with intent to sell; possessing methadone, a schedule II controlled substance, with intent to sell; and possessing approximately 28.7 grams of marijuana with intent to sell. He filed a motion to suppress evidence obtained pursuant to a search of his residence, which the court below denied after a hearing. He subsequently pled guilty to felonious possession of oxycodone, possession of methadone, and possession of marijuana. In conjunction with his guilty plea, the defendant properly reserved certified questions of law regarding the efficacy of the search warrant upon which the incriminating evidence was seized. After our review of the record and analysis of the questions reserved, we affirm the judgment below.

The defendant first attacks the search warrant on the grounds that the property to be searched was not adequately described therein. The warrant contains the following description: "the residence of Ricky Conatser, which is a house with wood siding and field stone, on Hwy 154 about 10.3 miles from the intersection of Hwy 154 and Hwy 127." The warrant also contains a reference to an attached map, but the record is unclear as to whether this map was actually attached to the warrant or to the underlying affidavit. Since the warrant did not specifically incorporate the affidavit, we will determine the sufficiency of the description based on the quoted language contained in the body of the warrant alone. *See State v. Sundee Leigh Baer,* No. 01C01–9401–CR–00001, Clay County (Tenn.Crim.App. filed April 28, 1994, at Nashville) ("Because an affidavit is not part of a warrant it may not be looked at to satisfy the requirement of a particular description unless reference or incorporation is made 'sufficient to direct the attention of the person executing it to such portion of the affidavit as may be referred to in the warrant proper, and to authorize him to use the same to strengthen the inadequacy' itself") (citations omitted).

■ Our federal constitution requires a search warrant to "particularly [describe] the place to be searched." U.S. Const., amend. IV. A warrant satisfies this requirement if it describes the place to be searched with such particularity that the searching officer may with reasonable effort ascertain and identify the intended place. *U.S. v. Gahagan,* 865 F.2d 1490, 1496 (6th Cir.1989). Tennessee law prohibits general warrants, Tenn. Const., art. I, § 7, and requires search warrants to describe "particularly ... the place to be searched." T.C.A. § 40–6–103. This requirement is satisfied if the description "particularly points to a definitely ascertainable place so as to exclude all others, and enables the officer to locate the place to be searched with reasonable certainty without leaving it to his discretion." *State v. Smith,* 868 S.W.2d 561, 572 (Tenn.1993). "Discrepancies between the warrant's description with regard to distances to the place to be searched and the actual distance to the building

searched do not invalidate the warrant if this test is satisfied." *State v. Bostic,* 898 S.W.2d 242, 245 (Tenn.Crim.App.1994).

■ The defendant attacks the warrant's description on the grounds that its "beginning point is indefinite"; the direction of travel from the intersection is not designated; the color of the house is not designated nor that the house is covered with "4x8 panels"; and that the distance from the intersection is 10.8 miles, not 10.3 miles. We first note that the beginning point is not patently indefinite: the beginning point is stated to be "the intersection of Hwy 154 and Hwy 127." The defendant's claim of indefiniteness is actually a claim of possible ambiguity which might arise from an officer attempting to follow the directions set forth. That is, proof adduced at the hearing established that there are, in fact, three different intersections of Hwy 154 and Hwy 127. However, the record also establishes that the searching officer, Officer Truman Creselious, was the affiant for the warrant and knew of his own personal knowledge where the defendant lived. Officer Creselious testified at the hearing that he had previously been to the defendant's house at the described location.[1]

> [W]hen the warrant is facially accurate about the description and location of the place to be searched, but a claim is made that an ambiguity will be reasonably perceived by an officer following the route provided in the warrant, the legal effect of such a possible ambiguity may be determined by considering the fact that the executing officer was the affiant and personally knew where the place to be searched was located.

*Bostic,* 898 S.W.2d at 246. *See also U.S. v. Williamson,* 1 F.3d 1134, 1136 (10th Cir. 1993) (acknowledging that "an executing officer's knowledge [of the place to be searched] may be a curing factor.") Therefore, we find this "ambiguity" to be insignificant under the circumstances of this case.

For the same reason, we find the omission of the direction to follow on Hwy 154 to be insignificant. Moreover, Officer Creselious testified that the correct direction in which to travel toward the defendant's house on Hwy 154 from Hwy 127 was north. He also testified that the portion of Hwy 154 south of the Hwy 127 intersection did not extend for ten miles. Thus, had an officer turned in the wrong direction on Hwy 154 from the intersection with Hwy 127, he or she would have quickly discerned their mistake, turned around and headed in the correct direction. The omission of this information did not raise the possibility that the searching officer would had to have used his or her discretion in order to determine which house was to be searched. This issue is without merit.

■ With respect to the warrant's description of the exterior of the house, and the fact that the actual distance was 10.8 miles rather than 10.3 miles, the defendant testified that there were six houses within a half mile on either side of his house. When asked whether any of those houses had fieldstone on them, he testified, "Ah, probably the foundation." He then admitted that the fieldstone on his house came up above the foundation "almost two foot [sic]" to where it met the siding. Officer Creselious also testified that, of the houses in the same vicinity as the defendant's, his was the only one with fieldstone. Thus, the one-half mile discrepancy was harmless under the circumstances of this warrant and its execution. As to the warrant's use of the term "wood siding," the defendant contends that his house is in fact sided with "pressboard." We fail to see the significance of this distinction. The exterior of the house was described with sufficient particularity.

■ The defendant next attacks the affidavit on which the warrant was based, claiming that it did not contain sufficient facts to establish probable cause and thereby justify issuance of the warrant because it did not specify the number of tylox capsules possessed or that they were possessed illegally. We first note that a magistrate's probable cause determination is accorded "great defer-

---

**1.** The defendant denied Officer Creselious had previously been to this house. The court below made no specific finding of fact with respect to this issue. However, the court below did overrule the suppression motion. This ruling accredits the testimony of the State's witness, Officer Creselious.

ence" by a reviewing court. *State v. Jacumin,* 778 S.W.2d 430, 431–32 (Tenn.1989). "The reviewing court's standard is whether the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing." *Id.* at 432.

With respect to the tylox capsules, the affidavit provided, in pertinent part, that the defendant "is/are in possession of the following described property: tylox capsules, which contain oxycodone, a schedule II controlled substance[.]" The affidavit further provided that the confidential informant from whom information was obtained "told the affiant that he/she had been to the [defendant's] residence at a time within the past 10 days and purchased tylox capsules from [the defendant] at [his] residence." The affidavit later states that this same informant "also told the affiant that over the past at least 90 days and [sic] he/she has made numerous purchases of tylox capsules from [the defendant] at his residence and that [the defendant] usually always had tylox or percocet to sell."

██ "[P]robable cause is a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Johnson,* 854 S.W.2d 897, 899 (Tenn.Crim. App.1993). The portions of the affidavit cited above certainly set forth circumstances indicative of illegal sales of a controlled substance and support a reasonable ground for suspicion of same. Although controlled substances may be legally possessed and conveyed under very limited circumstances,[2] the affidavit described activities inconsistent with legal possession and sale. The defendant cites no authority for the proposition that the affidavit must specifically state that the drugs for which the warrant is sought are "illegally possessed."[3] Nor has he cited any authority for the proposition that the affidavit must set forth the specific quantity of drugs thought to be possessed by the accused. This issue is without merit.

2. For instance, when prescribed by a licensed physician and purchased from a licensed pharmacist. *See, e.g.,* T.C.A. § 53–11–308.

3. Indeed, as previously noted by this Court, "controlled substances" is a valid description of

██ The defendant next attacks the warrant on the grounds that it was based on "stale" information. As set forth above, the affidavit in support of the warrant provided that the confidential informant had purchased tylox from the defendant "within the past 10 days" as well as numerous other times during the past 90 days or more. This Court has previously held that

[a]lthough the lapse of time between the occurrence of a crime and the issuance of a search warrant may affect the likelihood that incriminating evidence will be found, probable cause must be determined on a case by case basis. In making this decision, the issuing magistrate should consider whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature, the nature of the property sought, and the opportunity those involved would have had to dispose of incriminating evidence.

*State v. Meeks,* 876 S.W.2d 121, 124–25 (Tenn.Crim.App.1993) (citations omitted). In *State v. Thomas,* 818 S.W.2d 350 (Tenn.Crim. App.1991), this Court considered an affidavit in support of a search warrant which stated that the informant had seen cocaine at the involved residence at some point during the ten days preceding issuance of the warrant. The affidavit also contained information that the defendant "was keeping" cocaine on the premises. This Court noted that "[w]hen the illegal activity described is ongoing, courts have generally held that the affidavit does not become stale with the passage of time." *Id.* at 357. Further, we held that "even if the delay between the observance and the application for the search warrant was the full 10 days, we do not think that [is] inordinately long under these circumstances." *Id.* at 357. We reach the same conclusion here. The affidavit contained information that the drug sales were an ongoing activity from the same residence. A delay of up to ten days was not fatal.

drugs in a search warrant. *See Johnson,* 854 S.W.2d at 900. The warrant in this case described the tylox capsules as containing a controlled substance.

Finally, the defendant maintains that the "search warrant and affidavit did not contain separate [sic] exhibits but rather shared one common exhibit." Both the warrant and affidavit state "See the attached E–911 map attached hereto as Exhibit 1." The E–911 map provided visual directions to the defendant's residence. The record contains the original warrant, original affidavit, and a copy of the map that, apparently, was included with the originals. It also includes the issuing judge's copy of the warrant and affidavit, with another copy of the map. Apparently, one copy of the map was kept with each set of warrant and affidavit. It is impossible to discern whether the copy of the map was attached to the warrant or to the affidavit. However, since we determined above that the description of the property to be searched contained in the body of the warrant was sufficient without reference to the map, we conclude that it is irrelevant whether or not the warrant had attached to it a copy of the map. Finally, we note that the defendant cites us to no authority for the proposition that a "shared" (or missing) exhibit renders a search warrant invalid. Issues not supported by legal authority are waived. Ct.Crim.App.R. 10(b). This issue is without merit.

The judgment below is affirmed.

WELLES and RILEY, JJ., concur.