# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### AUGUST 1999 SESSION

FILED

September 24, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9812-CC-00478 |
| Appellee, | ) | |
| | ) | MAURY COUNTY |
| VS. | ) | |
| | ) | HON. ROBERT L. JONES, |
| JACQUELINE STEPHERSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Certified Question of Law) |

**FOR THE APPELLANT:**

JOHN S. COLLEY III
710 N. Main Street
P. O. Box 1476
Columbia, TN 38402-1476

**FOR THE APPELLEE:**

PAUL G. SUMMERS
Attorney General and Reporter

LUCIAN D. GEISE
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

T. MICHAEL BOTTOMS
District Attorney General

JESSE DURHAM
LAWRENCE R. NICKELL, JR.
Asst. District Attorneys General
10 Public Square
P. O. Box 1619
Columbia, TN 38402-1619

**OPINION FILED:** _____

**REVERSED AND DISMISSED**

**JOE G. RILEY, JUDGE**

## O P I N I O N

Defendant, Jacqueline Stepherson, pled guilty to possession of cocaine over 0.5 grams with intent to sell and possession of marijuana over ½ ounce with intent to sell. Pursuant to a plea agreement, defendant received concurrent suspended sentences of eight (8) years and one (1) year, respectively. The defendant with the consent of the state and the trial court reserved a certified question of law relating to the search and seizure of the drugs and certain banking records. *See* Tenn. R. Crim. P. 37(b)(2)(i). The issues presented on appeal are as follows:

1. whether the search warrant was invalid when the issuing magistrate designated an officer who was not present at the time of issuance as the officer to whom it was delivered for execution;

2. whether the search warrant affidavit provided sufficient probable cause for issuance;

3. whether the executing officers sufficiently complied with the "knock and announce" requirement; and

4. whether violation of the Financial Records Privacy Act requires suppression of the financial records seized from the bank.

We find merit only as to the first issue. Although the result may indeed be harsh, the plain and unambiguous language of Tenn. R. Crim. P. 41(c) requires us to **REVERSE** and **DISMISS**.

## SEARCH WARRANT

The search warrant affidavit was executed shortly after midnight on April 16, 1997, by Officer Tommy G. Goetz, a narcotics investigator. The pertinent parts of the affidavit are summarized as follows:

1. The Maury County Drug Task Force had the defendant under investigation for several months for trafficking in illegal narcotics.

2. On February 21, 1997, a "confidential informant" gave agents with the Drug Task Force information concerning the sale of illegal narcotics in an unrelated matter. The agents obtained a search warrant as a result of this information and seized illegal narcotics.

3. On January 15, 1997, and February 19, 1997, this

2

same informant provided information concerning the defendant dealing in large amounts of cocaine from her residence. The confidential informant referred to the defendant as "Ms Jackie" who had two sons, Vern and Ronnie, who distributed the cocaine. "Ms Jackie" was "the boss."

4. The confidential informant described the vehicles driven by Vern and Ronnie as a Tahoe and a Camero. Agents with the Drug Task Force verified that the defendant had a Tahoe and Camero registered in her name.

5. The confidential informant stated that the defendant and her sons were in possession of numerous guns that were "bigger" than the weapons possessed by law enforcement. The informant was very afraid of the defendant and her sons.

6. The confidential informant had been in the defendant's residence on numerous occasions and had seen large amounts of cocaine and cash.[1]

7. Agents of the Drug Task Force corroborated that the defendant lived at the residence described by the confidential informant and that at least two males, Ronnie and Vern, lived at the same residence.

8. On April 15, 1997, the affiant received information from a "citizen" that had given historical information about the defendant that had previously been verified. The citizen stated that the defendant had come in from out-of-state "today" with a large quantity of cocaine.

9. The citizen stated that the defendant and her sons, Ronnie and Vern, would be distributing the cocaine from defendant's residence.

10. The citizen had seen several weapons, large amounts of cocaine and cash on numerous occasions at the residence.

11. The citizen stated that Vern drove the Tahoe and Ronnie drove the Camero.

12. The citizen stated that the defendant got her supply of cocaine from "Shawn Cooper" in Alabama. The affiant, Officer Goetz, stated that Shawn Cooper was presently under felony indictment in Maury County for the possession of cocaine for resale. Agents with the Drug Task Force verified that the defendant made numerous telephone calls to Shawn Cooper in Alabama.

13. In an earlier unrelated matter, a law enforcement officer attempted to summon the defendant to the door of her residence. They received no response but noticed two vehicles in the driveway. Shortly after the officer left the residence, the officer talked by telephone to a person at

---

[1]The affidavit gives no further indication of when these occasions were.

3

the residence who identified herself as "Jacqueline Stepherson."

14.     Officer Goetz stated that he believed an immediate entry after knocking was necessary due to the presence of numerous guns in the residence. He stated that he believed there was a large amount of cocaine and cash from the sale of cocaine in the residence.

15.     Officer Goetz further stated that he had 15 years experience as a police officer and 10 years as a narcotics investigator. He had participated in the execution of over 100 search warrants involving narcotics trafficking. His investigations led to over 100 felony convictions in both federal and state courts on drug related charges.

16.     Based upon his experience, Officer Goetz stated that drug dealers commonly have weapons in their residence in order to protect and secure their illegal profits. This is because drug dealers were often the victims of robberies during drug transactions.

The magistrate issued the warrant at 12:25 a.m. on April 16, 1997. The warrant contained the magistrate's certification that "I have delivered this search warrant for execution to: Officer Bill Doelle." It is undisputed that Officer Doelle was not present at that time; the search warrant was actually physically delivered by the magistrate to Officer Goetz; and Officer Goetz subsequently gave it to Officer Doelle. Both Officers Doelle and Goetz participated in the search and seizure at defendant's residence.

The search warrant was executed at defendant's residence approximately two to three hours after its issuance. Several officers from the Drug Task Force and Columbia S.W.A.T. team participated in its execution. Officers approached two separate entrances to the residence, knocked, announced their identification and request for entry, counted to four and simultaneously entered by knocking down the doors with "battering rams." "Flash bangs," devices which make a "big flash and a bang," were also used. The search and seizure ensued.

Several days after the search and seizure, the trial court signed an *ex parte* order authorizing the seizure of defendant's banking records. Defendant contends

4

the seizure was not in compliance with the Financial Records Privacy Act.

## DESIGNATION OF OFFICER FOR EXECUTION OF WARRANT

Officer Goetz was the affiant and only officer who personally appeared before the issuing magistrate. Although the issuing magistrate physically delivered the search warrant to Officer Goetz, the issuing magistrate endorsed "Officer Bill Doelle" as the person to whom it was delivered for execution. Officer Goetz subsequently gave the search warrant to Officer Doelle prior to its execution, and both officers participated in its execution. Defendant contends the issuing magistrate's improper designation of Officer Doelle as the person to whom the warrant was delivered for execution was fatal to its validity. We must agree with this contention.

Tenn. R. Crim. P. 41(c) provides in pertinent part as follows:

> The search warrant shall be *directed to and served by* the sheriff or any deputy sheriff of the county wherein issued, any constable, or any other peace officer with authority in the county.... The magistrate shall endorse upon the search warrant the hour, date, and *name of the officer to whom the warrant was delivered for execution.... Failure of the magistrate to endorse thereon the date and time of issuance and the name of the officer to whom issued... shall make any search conducted under said search warrant an illegal search and any seizure thereunder an illegal seizure.* (emphasis added)

The state contends the search warrant was "directed toward any Maury County peace officer;" Officer Doelle was, in fact, an executing officer; and he signed the return. The state argues this is sufficient compliance.

Tenn. R. Crim. P. 41(c) provides that a search warrant may be "directed to and served by" any peace officer with authority in the county. A separate provision

5

of the rule requires an endorsement by the magistrate of the officer to whom the warrant was "delivered for execution."  The latter provision obviously requires the personal presence of the officer to whom it was "delivered for execution" by the issuing magistrate.  The language in the "fatal" clause concerning the failure to "endorse ... the name of the officer to whom issued" relates to the requirement to "endorse ... [the] name of the officer to whom the warrant was delivered for execution."

The state's reliance upon State v. Smith, 868 S.W.2d 561 (Tenn. 1993), State v. Pigford, 572 S.W.2d 921 (Tenn. 1978), and State v. Robinson, 622 S.W.2d 62 (Tenn. Crim. App. 1981), is misplaced.  These cases address those authorized to execute a search warrant, not the failure of the magistrate to endorse the name of the officer to whom it was delivered.

Where the issuing magistrate fails to endorse on the warrant the hour, date, and name of the officer to whom it is delivered for execution, the search is illegal. Evans v. State, 354 S.W.2d 263, 264 (Tenn. 1962); Talley v. State, 345 S.W.2d 867, 869 (Tenn. 1961).  These two cases were decided under the former statute which required the issuing magistrate to endorse on the search warrant "the name of the officer to whom the warrants were delivered for execution ....  Failure to comply with this section shall make any search ... an illegal search and seizure." Tenn. Code Ann. § 40-518 (repealed 1979).  Virtually identical language was carried over into Tenn. R. Crim. P. 41(c) upon its adoption.  Therefore, it is clear that Tenn. R. Crim. P. 41(c) makes fatal the failure to properly endorse the name of the officer to whom the warrant was delivered for execution.

The express language of the rule provides that the "failure to endorse thereon ... the name of the officer to whom issued" renders the search and seizure "illegal." Tenn. R. Crim. P. 41(c).  This language is plain, mandatory and must be followed.  *See* State v. Steele, 894 S.W.2d 318, 319 (Tenn. Crim. App. 1994).

6

This result seems harsh to this panel. Neither the United States Constitution nor the Tennessee Constitution requires such an endorsement. This state, like other states, has imposed requirements that go beyond constitutional requirements. *See* LaFave, *Search & Seizure*, § 4.12 (3d ed 1996). It is not uncommon for such provisions to be characterized as directory or ministerial so that their violation does not render the evidence inadmissible. *Id*. However, the express language of Tenn. R. Crim. P. 41(c) leaves this Court no option. Only an amendment to the rule can effect a different result.

In fact, the history of Tenn. R. Crim. P. 41(c) reflects this conclusion. By order entered January 31, 1984, the Tennessee Supreme Court proposed to the General Assembly that Tenn. R. Crim. P. 41(c) be amended by changing the last sentence so as to make the search and seizure illegal only when due to "[a] failure to substantially comply with the material requirements of this subsection ...." The proposed comment stated that the proposed amendment "is intended to modify the harsh remedy present under the [current] rule for purely technical violations of the search warrant requirements." By order entered May 11, 1984, the Tennessee Supreme Court withdrew and deleted these proposals. Thus, the "harsh remedy" remains.

We, therefore, conclude that the warrant was fatal since it was not delivered by the issuing magistrate to the person so stated in the warrant.

## PROBABLE CAUSE - INFORMANTS

Although unnecessary for the disposition of this appeal, we will address the other issues in the event of an appeal to the Supreme Court of Tennessee.

The trial court found that the information from the first informant indicating drug activity on January 15 and February 19, 1997, did not alone provide a sufficient

7

basis to establish probable cause for the possession of contraband on the date of issuance of the warrant, April 16, 1997. We agree with the trial court that this information alone was too "stale" to establish probable cause. *See* State v. Curtis, 964 S.W.2d 604, 616 (Tenn Crim. App. 1997).

The trial court further concluded the second informant did not qualify as a "citizen informant." Again, we agree with this ruling as there is insufficient information in the affidavit to establish this fact. *See* State v. Stevens, 989 S.W.2d 290, 295 (Tenn. 1999).

Accordingly, the trial court properly determined that the information provided by the informants must meet the two-prong test adopted in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989). The two-prong test requires both "(1) the basis for the informant's knowledge and either (2)(a) a basis establishing the informant's credibility or (2)(b) a basis establishing that the informant's information is reliable." Stevens, 989 S.W.2d at 294 (citing State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993)).

We consider the following portions of the search warrant affidavit significant in determining the basis of knowledge and reliability of the information. Defendant had been under investigation by the Drug Task Force for several months. Although the information from the first informant alone was too stale to support probable cause, the magistrate could properly consider the first informant "reliable" since earlier information provided by the informant led to the seizure of illegal narcotics. Thus, the magistrate could properly conclude from information from the first informant that the defendant previously had large amounts of cocaine in the residence, albeit at a time significantly prior to the date of the affidavit. The identity of the defendant and her two sons and the location of the residence were

corroborated by the officer. The officer also independently verified that the defendant had talked by phone on numerous occasions to a suspected drug dealer in Alabama who was under felony indictment in Maury County for possession of cocaine for resale. The second informant had also seen large amounts of cocaine at defendant's residence on several prior occasions, although the exact dates are unknown.

A magistrate's determination of probable cause is accorded "great deference" by a reviewing court. Jacumin, 778 S.W.2d at 431-32. The standard is whether the magistrate had a "substantial basis" for concluding that a search warrant would yield evidence of wrongdoing. State v. Conaster, 958 S.W.2d 357, 361 (Tenn. Crim. App. 1997)(citing Jacumin, 778 S.W.2d at 432)). When illegal activity is ongoing, courts have generally held that the affidavit is less likely to become "stale" with the passage of time. State v. Thomas, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991).

The reliability of an informant as well as the information furnished must be judged from all the circumstances and from the entirety of the affidavit. Cauley, 863 S.W.2d at 417. Furthermore, independent police corroboration can make up deficiencies either as to the basis of knowledge or reliability. State v. Henning, 975 S.W.2d 290, 295 (Tenn. 1998); Jacumin, 778 S.W.2d at 436.

We conclude that the affidavit, taken in its entirety, indicates ongoing illegal activity. This is especially true considering the independent corroboration by the authorities. Thus, the magistrate had a substantial basis for concluding that cocaine would be present at the residence shortly after the issuance of the warrant. The Jacumin two-prong test was satisfied.

This issue is without merit.

9

## KNOCK AND ANNOUNCE

Defendant contends that the officers violated the "knock and announce" requirement by waiting only four seconds prior to the forced intrusion into the residence. We conclude that compliance with the "knock and announce" doctrine was not required under the facts and circumstances of this case.

Compliance with the "knock and announce" doctrine is not required if the officers have a reasonable suspicion that knocking and announcing would be dangerous, futile, or allow the destruction of evidence. Henning, 975 S.W.2d at 300 (citing Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997)). In this instance the officers had information from one informant that the defendant and her sons possessed numerous guns that were "bigger" than the weapons possessed by law enforcement. Information from the other informant also indicated that the informant had seen several weapons on numerous occasions at the residence. Furthermore, the officers had reason to believe that on a prior occasion the defendant did not come to the door when summoned by an officer. Although we agree that the four-second wait after the knock and announce was insufficient to satisfy a knock and announce time requirement, we conclude the information possessed by the officers was sufficient to excuse compliance with the knock and announce requirement.

This issue is without merit.

## FINANCIAL RECORDS PRIVACY ACT

Finally, defendant contends there was a violation of the Financial Records Privacy Act relating to the subsequent seizure of defendant's banking records from

10

the bank.  *See* Tenn. Code Ann. § 45-10-101 *et seq.*  We need not address this issue.  The case is before this Court upon a certified question of law after entry of a guilty plea.  As such, a certified question of law must be dispositive of the case.  *See* Tenn. R. Crim. P. 37(b)(2)(i).  Generally, an issue is dispositive only when the appellate court must either affirm or reverse and dismiss.  <u>State v. Wilkes</u>, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

This issue is not dispositive.  If the initial search of the residence is valid, the state can still proceed to prosecution without the bank records.  If the initial search is invalid as we have held, the state may not proceed to prosecution regardless of whether the banking records were properly seized.

Accordingly, this issue is not properly before this Court.

## CONCLUSION

Due to the non-compliance with Tenn. R. Crim. P. 41(c), the judgment of the trial court is **REVERSED** and the case **DISMISSED**.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**THOMAS T. WOODALL, JUDGE**

_____
**L. T. LAFFERTY, SENIOR JUDGE**

11