# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 12, 2003 Session

## STATE OF TENNESSEE v. THURMAN L. WHITSEY AND CHARLIE MAE WHITSEY

### Direct Appeal from the Criminal Court for Davidson County
### No. 200-B-1062     Cheryl A. Blackburn, Judge

### No. M2001-03127-CCA-R3-CD - Filed April 23, 2003

A Davidson County jury convicted defendants Thurman L. Whitsey[1] and his mother, Charlie Mae Whitsey, of conspiracy to possess cocaine with intent to sell. The jury also convicted Thurman Whitsey of possession of cocaine with intent to sell, possession of marijuana with intent to sell, and unlawful possession of a weapon. In addition, the jury convicted Charlie Mae Whitsey of facilitation of possession of cocaine with intent to sell, simple possession of marijuana, and facilitation of unlawful possession of a weapon. The trial court imposed an effective sentence of eleven years upon Thurman Whitsey and an effective sentence of seven years upon Charlie Mae Whitsey. On appeal, both defendants contend the trial court erred in denying their motions to suppress evidence obtained as a result of an invalid search warrant. Charlie Mae Whitsey also submits the evidence was insufficient to support her conviction for facilitation of unlawful possession of a weapon. Upon review of the record and applicable law, we reverse and dismiss Charlie Mae Whitsey's conviction for facilitation of unlawful possession of a weapon and Thurman Whitsey's conviction for unlawful possession of a weapon; otherwise, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Reversed and Dismissed in Part

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. JOSEPH M. TIPTON, J., filed a concurring opinion.

Brent Horst, Nashville, Tennessee, for the appellant, Thurman L. Whitsey.

Cynthia F. Burnes (on appeal) and Kyle L. Marquardt (at trial), Nashville, Tennessee, for the appellant, Charlie Mae Whitsey.

---

[1] In other pleadings the defendant's name appears as "Thurman Whitsey, Jr." However, in accordance with this court's practice, we list his name as it appears in the indictment.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John C. Zimmerman, Assistant District Attorney General, for the appellant, State of Tennessee.

## OPINION

Neither defendant challenges the sufficiency of the evidence relating to the drug convictions. Charlie Mae Whitsey does challenge the sufficiency of the evidence relating to her conviction for facilitation of unlawful possession of a weapon. Because of the limited nature of the issues presented for review, we will give only a brief account of the trial testimony.

On October 22, 1999, law enforcement officers observed a drug transaction in which Antonio Peebles sold cocaine to Gary Phares. Some officers then followed Phares's vehicle and ultimately seized 166.3 grams of cocaine from the vehicle as well as marijuana and drug paraphernalia during a search of his residence. Phares told the authorities he purchased cocaine from Peebles every Friday for the past year. Phares agreed to cooperate with the authorities.

Other officers followed Peebles from the site of the drug transaction to the defendants' residence at 2525 Allenwood Drive. There, an officer observed Peebles standing in the yard speaking to defendant Thurman Whitsey.

On October 29th, Phares called Peebles to again purchase cocaine. Peebles informed Phares he would have to "go to his man." Immediately thereafter, officers observed Peebles go directly to the defendants' residence where he spoke to Thurman Whitsey in the yard. Peebles subsequently informed Phares he was unable to obtain the cocaine.

On November 12th, Phares arranged to purchase cocaine from Peebles. Officers followed Peebles from his residence to the Allenwood area and from Allenwood Drive to a parking lot where Peebles sold Phares 111.5 grams of cocaine.

Officers executed a search warrant at the defendants' residence on the same date. Officers found cocaine, marijuana and numerous weapons throughout the residence, as well as a "crack cooking station" in the basement bedroom. Charlie Mae Whitsey, the mother of Thurman Whitsey, advised the officers that Thurman Whitsey's bedroom was in the basement. Officers found mail addressed to Thurman Whitsey at that location; his vehicle was registered to him at the Allenwood address; and the electricity at the residence was listed under his name.

Defendant Thurman Whitsey testified that he did not reside at the Allenwood address. He denied selling drugs to Peebles and stated he was unaware of the presence of drugs in the Allenwood residence.

Defendant Charlie May Whitsey testified Thurman Whitsey did not reside in the residence, but two other men did. She denied any awareness of the presence of firearms or drugs in the residence except for a revolver which she kept in her bedroom and a .22 caliber rifle which was kept in the living room closet.

# I.  SEARCH WARRANT

The defendants contend the search warrant executed at 2525 Allenwood Drive was invalid because the affidavit in support of the search warrant was insufficient to establish probable cause. The affidavit consisted of four legal-sized typed pages.  We will summarize the affidavit.

## A.  The Affidavit

Officer Phillip L. Taylor, a drug enforcement investigator, executed the affidavit in support of the search warrant.  The affidavit stated that in 1994, Officer Aaron Thomas, while on an undercover assignment, accompanied a confidential informant ("C.I.") to purchase one ounce of cocaine from Thurman Whitsey.  C.I. paged Whitsey, who instructed him to go to 2525 Allenwood Drive.  Upon arriving at the address, Officer Thomas and C.I. met with Thurman Whitsey, whom the officer recognized from a police mug shot.

While C.I. and Whitsey were in the driveway, they had a brief conversation and then walked behind the residence.  Although Officer Thomas lost sight of them, C.I. was wearing a body transmitter.  According to C.I., Whitsey entered the residence and returned with one ounce of cocaine.  Whitsey gave the cocaine to C.I., who then gave it to Officer Thomas.  Whitsey was charged with the sale of cocaine, but the case was later dismissed due to a speedy trial violation.

The affidavit states that on October 22, 1999, the TBI received information from Agent Chip Lewis that Gary Phares, a resident of Pickett County, was going to Nashville to purchase nine ounces of cocaine.  Officer Taylor assisted the TBI with the surveillance of Phares.  TBI agents and police officers from the drug task force followed Phares to a parking lot in a shopping center.  Phares parked his vehicle next to a blue Ford Taurus, which was registered to Antonio Peebles at 2704 Oakwood Avenue.

Antonio Peebles walked from the shopping area to the Taurus and entered the vehicle; Phares then entered the passenger side of the Taurus, where he remained for less than two minutes.  TBI agents followed Phares as he drove out of the parking lot and stopped him in Overton County.  Upon searching Phares's vehicle, the agents found five ounces of cocaine.  Agent Lewis interviewed Phares, who stated he had been driving to Nashville every Friday for the past year to purchase cocaine from "Tony."

After Peebles delivered the cocaine to Phares, Officer Taylor and other officers followed Peebles, who was driving the blue Taurus.  After leaving the parking lot, Peebles stopped at Prince's Chicken, bought take-out food, and then drove straight to 2525 Allenwood Drive.  While Peebles was parked in the driveway, Officer Thomas observed Thurman Whitsey, whom he recognized from the 1994 undercover operation, arrive in a 1987 Mercury registered to Whitsey at the Allenwood address.  According to the records of the Nashville Electric Service, the electric service at the residence was also listed under Thurman Whitsey's name.  Officer Thomas observed Peebles and Whitsey speaking in the yard; however, he was unable to maintain continuous surveillance.  Less than five minutes later, however, Sergeant James McWright observed Peebles park the Taurus in the driveway at 2704 Oakwood Avenue and enter the residence.

Phares informed TBI agents he ordered the cocaine from Peebles by calling a telephone number, which was listed to Angela Watson at 1216 Sioux Terrace in Madison, Tennessee. On October 28th, Officer Taylor drove by the address and observed a silver vehicle parked behind the residence. The license tag on the vehicle was listed to Peebles' blue Taurus, and the electric service at the residence was listed under Watson's name.

On October 29th, under the direction of Agent Lewis, Phares called Peebles, who informed Phares "his man was out and could not do a cocaine deal that Friday." Surveillance officers watched 1216 Sioux Terrace while Phares called Peebles. Within minutes after the telephone call ended, the officers saw Peebles leave the address driving a 1986 Mercury registered under his name at 2704 Oakwood Avenue. The officers followed Peebles who "went straight to 2525 Allenwood Dr." where he remained for less than ten minutes before driving to the Oakwood address.

On November 4th, Phares called Agent Lewis and stated Peebles informed him the cocaine would not be available until the following week. On November 12th, Phares called Peebles, who instructed him to come to Nashville to purchase cocaine. At approximately 12:10 p.m., Peebles left Sioux Terrace and drove to the area of Oakwood Avenue. Although surveillance officers lost sight of him, approximately two minutes later they observed Peebles driving from the direction of 2525 Allenwood Drive and turning onto Oakwood Avenue. Peebles then drove to 2704 Oakwood Avenue where he remained for approximately five minutes.

While Peebles was at Oakwood, Phares called him, and Peebles told Phares to meet him at the "same location." Phares and an undercover TBI agent met Peebles in the same parking lot where the previous transaction occurred. There, another drug transaction occurred. As Peebles was leaving, he saw the surveillance officers, threw the money out of his window, and attempted to escape from the officers. Approximately fifteen minutes later, Officer Thomas drove past 2525 Allenwood Drive and observed Thurman Whitsey standing in the front yard of the residence.

In the affidavit, Officer Taylor stated he believed Peebles went to 2525 Allenwood Drive and obtained the cocaine he delivered to Phares. The officer further stated he believed Thurman Whitsey was distributing cocaine from his residence. Officer Taylor also noted in the affidavit that he had extensive experience in the investigation of narcotics trafficking, including the execution of over 800 search warrants and participation in investigations leading to over 1,500 convictions. He noted that based on his experience, he has learned "drug dealers commonly 'front,' or loan on consignment, drugs to their customers who must pay for their drugs from the proceeds of their re-sales." He further noted that drug dealers very often keep records of drug transactions in their residence.

In denying the defendants' motion to suppress, the trial court concluded Officer Taylor's sworn affidavit set forth information sufficient to link Thurman Whitsey's residence to illegal activity and to establish probable cause for issuance of a search warrant. The trial court found the information in the affidavit sufficiently demonstrated a pattern of activity by Thurman Whitsey to allow the magistrate to conclude Thurman Whitsey and Peebles were conspirators and that Thurman Whitsey was Peebles' supplier.

**B. Probable Cause**

The Fourth Amendment warrant requirement demands that a probable cause determination be made by a neutral and detached magistrate. State v. Valentine, 911 S.W.2d 328, 330 (Tenn. 1995); State v. Jacumin, 778 S.W.2d 430, 431 (Tenn. 1989); State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Probable cause "exists when facts and circumstances demonstrated by an underlying affidavit are sufficient in themselves to warrant a person of reasonable caution to believe that certain items are the fruits of illegal activity and are to be found at a certain place." State v. Norris, 47 S.W.3d 457, 468 (Tenn. Crim. App. 2000). If probable cause is absent, the magistrate is not empowered to issue a warrant. When reviewing the issuance of a search warrant, this court must determine whether the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing. Jacumin, 778 S.W.2d at 432. The magistrate's judgment is entitled to great deference on appeal. *Id.* at 431-32.

Only the information contained within the four corners of the affidavit may be considered in determining probable cause. *See* State v. Keith, 978 S.W.2d 861, 870 (Tenn. 1998). However, probable cause is based upon a "flexible, common-sense standard . . . ; it does not demand any showing that such a belief be correct or more likely true than false." State v. Hawkins, 706 S.W.2d 93, 95 (Tenn. Crim. App. 1985) (citing Texas v. Brown, 460 U.S. 730, 742, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983)). Furthermore, evidence of probable cause must be "weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." United States v. Cortez, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). Thus, the expertise and experience of the law enforcement officer should be considered. 2 LaFave, *Search and Seizure* § 3.2(c), p. 38-39 (3d ed. 1996); *see also* United States v. Blair, 214 F.3d 690, 696 (6th Cir. 2000) (holding affiant's extensive experience in investigating drug trafficking and his observation that drug traffickers commonly keep financial records in their residences were properly considered in establishing probable cause).

### 1. Staleness - 1994 Transaction

The defendants first contend the information in the affidavit regarding the alleged drug transaction occurring in 1994 is stale. They submit the magistrate erred in considering this information in finding probable cause for issuance of the search warrant.

In order to establish probable cause, an affidavit must contain facts from which a reasonable conclusion may be drawn that the evidence sought will be found in the place to be searched pursuant to the warrant. State v. Vann, 976 S.W.2d 93, 105 (Tenn. 1998). In addition, the affidavit must allege the evidence sought or the illegal activity in question exists at the time the search warrant is to be issued. Norris, 47 S.W.3d at 470. Therefore, the affidavit must set forth information which will allow a magistrate to determine whether the facts are too stale to establish probable cause at the moment the warrant is sought to be issued. State v. Reid, 91 S.W.3d 247, 275 (Tenn. 2002).

Probable cause is to be determined on a case-by-case basis. State v. Meeks, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993). Generally, courts have held that the information in the affidavit is less likely to become stale with the passage of time if the illegal activity in question is ongoing.

State v. Stepherson, 15 S.W.3d 898, 903 (Tenn. Crim. App. 1999); State v. Thomas, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991). Sales of drugs can, depending upon the circumstances, be an ongoing activity. *See* State v. Conaster, 958 S.W.2d 357, 361 (Tenn. Crim App. 1997).

In the case at bar, the affidavit described an alleged drug transaction which occurred in 1994 between defendant Thurman Whitsey, a confidential informant, and an undercover police officer at 2525 Allenwood Drive, the residence searched pursuant to the warrant. Whitsey was arrested for the offense, but the case was later dismissed due to a speedy trial violation. The affidavit then set forth information regarding alleged drug transactions occurring in 1999. Although similar in nature, the alleged activities occurred approximately five years apart. Furthermore, the affidavit did not provide any information alleging criminal activity by the defendants between the years 1994 and 1999. Thus, there was no showing of ongoing illegal activity. Because the affidavit failed to allege any other ongoing criminal activity by these defendants between the years 1994 and 1999, we conclude the information in the affidavit regarding the 1994 transaction is stale.

### 2. The Remaining Information in the Affidavit

We must next determine the effect of the inclusion of the 1994 drug transaction in the affidavit on the validity of the search warrant. We conclude that if the affidavit is sufficient to establish probable cause without reliance upon any improper consideration, the warrant is valid. *See* United States v. Karo, 468 U.S. 705, 719, 104 S. Ct. 3296, 82 L. Ed. 2d 530 (1984); Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Thus, we examine the remaining information set forth in the affidavit to ascertain whether it establishes probable cause.

An affidavit in support of a search warrant must include facts establishing a nexus between the criminal activity and the place to be searched. State v. Longstreet, 619 S.W.2d 97, 99 (Tenn. 1981). The affidavit stated that on October 22, 1999, TBI agents and police officers witnessed a drug transaction during which Peebles sold Phares approximately five ounces of cocaine. The affiant and other officers then followed Peebles "straight to 2525 Allenwood Drive" after Peebles stopped for food at Prince's Chicken. Officer Thomas then saw Peebles speaking to Thurman Whitsey in Whitsey's driveway, and Peebles then proceeded to his residence at 2704 Oakwood Avenue. Thurman Whitsey's vehicle was registered to him at the Allenwood address, and the electric service at the residence was also in his name.

The affidavit further provides that on October 29th, under the supervision of TBI agents, Phares called Peebles attempting to purchase cocaine. However, Peebles told Phares "his man" did not have any cocaine at that time. After the telephone call was completed, surveillance officers followed Peebles within minutes after the call directly to the Allenwood address where he remained for less than ten minutes. Just prior to the drug sale from Peebles to Phares on November 12th, surveillance officers followed Peebles, lost sight of him for about two minutes, observed Peebles "coming from the direction of 2525 Allenwood" turning onto Oakwood, and saw him enter 2704 Oakwood Avenue where he stayed five minutes. Peebles then met Phares and consummated the sale of cocaine. Thurman Whitsey was observed by an officer outside of his 2525 Allenwood residence about fifteen minutes after the sale.

According to the affidavit, a short time before or after Peebles engaged in both drug transactions, surveillance officers observed him either at the Allenwood address or coming from the direction of that address. On one of these occasions, an officer saw Peebles speaking to Thurman Whitsey in the yard of the residence immediately after Peebles had completed a drug transaction. Furthermore, the officers followed Peebles to the Allenwood address immediately after he completed a telephone conversation with Phares during which he discussed whether his supplier had cocaine available to sell. On another occasion Peebles was seen coming from the direction of the Allenwood address shortly prior to making a sale of cocaine. In consideration of (1) the flexible, common-sense standard of ascertaining probable cause; (2) the need to weigh the affidavit from the perspective of those engaged in law enforcement; (3) the expertise of the affiant in drug trafficking; (4) the affiant's experience indicating that drug traffickers commonly "front" drugs to buyers who then pay after resale; and (5) the affiant's experience indicating that drug traffickers very often keep records of drug transactions in their residences; we conclude the facts alleged in the affidavit, absent the information concerning the 1994 transaction, provide probable cause to believe that Thurman Whitsey was involved, at the very least, in a conspiracy to distribute cocaine from his residence at 2525 Allenwood Drive. We further conclude the affidavit established probable cause that records of drug activity would be located within the residence. *See* Blair, 214 F.3d at 696. In our view, the affidavit provided a substantial basis for concluding the search warrant would uncover evidence of criminal wrongdoing. Jacumin, 778 S.W.2d 432. Therefore, we conclude the magistrate properly found probable cause existed for issuance of the search warrant.

## II. SUFFICIENCY

Defendant Charlie Mae Whitsey contends the evidence was insufficient to support her conviction for facilitation of unlawful possession of a weapon with the intent to employ it in the commission of or escape from an offense. We agree.

### A. Standard of Review

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). It is the appellate court's duty to affirm the conviction if the evidence was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

### B. Facilitation of Unlawful Possession of a Weapon

A person who "possesses any deadly weapon with intent to employ it in the commission of or escape from an offense" commits a Class E felony. Tenn. Code Ann. § 39-17-1307(c). However, it is a defense to the felony if the possession was at the person's place of residence. *Id.* § 39-17-1308(a)(3)(A). One is criminally responsible for the facilitation of a felony "if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility . . . , the person knowingly furnishes substantial assistance in the commission of the felony." *Id.* § 39-11-

408(a). In order to sustain a conviction for the facilitation of a felony, the state must prove (1) a specified felony was committed, and (2) the accused gave substantial assistance to the person committing the specified felony. State v. Parker, 932 S.W.2d 945, 950-51 (Tenn. Crim. App. 1996).

Defendant Charlie Mae Whitsey contends the evidence was insufficient to establish that defendant Thurman Whitsey committed the felony of unlawful possession of a weapon because the weapons were found in his place of residence. *See* Tenn. Code Ann. § 39-17-1308(a)(3)(A). She submits that she could not be convicted of facilitation of an act which itself is not illegal. We agree.

According to the evidence presented at trial, the guns, which the state alleged were in the defendants' possession, were found inside the residence at 2525 Allenwood Drive. The state contended at trial that defendant Thurman Whitsey lived at the residence. His mail was delivered to him at that address; utilities were listed in his name; his vehicle was registered to him at the Allenwood address; and defendant Charlie Mae Whitsey informed police officers his bedroom was in the basement of the residence. Because the proof established the weapons were found at Thurman Whitsey's place of residence, the evidence was insufficient to support defendant Charlie Mae Whitsey's conviction for facilitation of unlawful possession of a weapon.

During closing argument, the state contended this defense was only available if the defendants possessed the weapons in the residence for self-protection and was not available if possession was associated with illegal activity. However, this language does not appear in the statute. *See* Tenn. Code Ann. § 39-17-1308. Furthermore, we are not at liberty to construe this limitation into the statute. *See* State v. Goodman, 90 S.W.3d 557, 564 (Tenn. 2002) (noting that courts are restricted to the ordinary meaning of words in a statute unless an ambiguity exists). Accordingly, we reverse and dismiss defendant Charlie Mae Whitsey's conviction for facilitation of unlawful possession of a weapon.

Defendant Thurman Whitsey failed to raise as an issue on appeal the sufficiency of the evidence for his conviction for unlawful possession of a weapon. However, insufficient evidence constitutes plain error. *See* Tenn. R. Crim. P. 52(b). Accordingly, we reverse and dismiss his conviction for unlawful possession of a weapon.

### III. CONCLUSION

In summary, we conclude the affidavit sufficiently established probable cause for issuance of the search warrant. Furthermore, we conclude the evidence was insufficient to support defendant Charlie Mae Whitsey's conviction for facilitation of unlawful possession of a weapon and defendant Thurman Whitsey's conviction for unlawful possession of a weapon. Accordingly, we reverse and dismiss the two weapon convictions. We otherwise affirm the judgments of the trial court.

_____
JOE G. RILEY, JUDGE