IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2003

## WILLIAM G. BARNETT v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40000216      Michael R. Jones, Judge**

_____

**No. M2002-01822-CCA-R3-PC - Filed May 13, 2003**

_____

The petitioner, William G. Barnett, appeals the denial of his petition for post-conviction relief. On appeal, the petitioner contends he received ineffective assistance of counsel when he pled guilty to two drug-related offenses. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Roger Eric Nell, District Public Defender; and Collier W. Goodlett, Assistant District Public Defender, for the appellant, William G. Barnett.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On March 11, 1999, the petitioner pled guilty to possession with intent to sell over .5 grams of cocaine, a Class B felony, and the sale of over .5 grams of cocaine to a minor, a Class A felony. *See* Tenn. Code Ann. § 39-17-417(c)(1), (k). Pursuant to the plea agreement, four additional drug-related charges were dismissed. The trial court sentenced the petitioner to eight years for the possession conviction and fifteen years for the sale conviction to be served concurrently. The petitioner then filed a petition for post-conviction relief maintaining his defense counsel was ineffective in failing to contest the search of his residence, thereby leading to an involuntary guilty plea. Upon the post-conviction court's denial of the petition, this appeal ensued.

# I. POST-CONVICTION RELIEF HEARING

During the post-conviction relief hearing, Judy Harris testified she and her husband owned the residence at 1244 Tally Drive in Clarksville, Tennessee. She stated the house was divided into two apartments, a two-bedroom apartment located in the front of the house and a one-bedroom apartment located in the back of the house. The door leading to the front apartment, Apartment A, where the petitioner was living at the time of the offense, was labeled "1244A." A porch and two doors were located on one side of the house. One of the doors led into the kitchen of petitioner's Apartment A, and the other door led into Apartment B.

Harris testified the apartments shared the same mailbox, which was labeled with the numbers "1244." Each apartment was separately metered, and the two electric meters were located behind the house. Each apartment also had a separate telephone line. Harris acknowledged that the two electric meters located behind the house and the "1244A" label on the front door were the only external indications of the possible existence of multiple dwellings.

Harris testified a door adjoined the two apartments inside the residence. Harris stated, however, that when she and her husband converted the house into two separate apartments, they locked the inside door in Apartment A that led to Apartment B and covered the door with paneling in Apartment B. The door and the paneling were separated with insulation. Harris stated that both this door and the front door to Apartment A were damaged during the execution of the search warrant. It is unclear from her testimony whether the damage to the interior door was such that a person could enter Apartment B.

Detective John Nichols testified he conducted surveillance on the residence for several days prior to obtaining a search warrant. During the surveillance, the detective drove by the residence on numerous occasions and observed the residence from a parking lot located across the street. During the surveillance, the detective observed one black mailbox in front of the residence, which was labeled with the numbers "1244." Detective Nichols stated everyone who entered and exited the residence used the front door.

Detective Nichols testified an informant purchased cocaine from the residence while Nichols observed from the parking lot. The detective stated that after the purchase was completed, he questioned the informant regarding the layout of the residence. The informant advised him of the location of various rooms inside the residence. Detective Nichols stated he did not obtain any indication from the informant that the residence was a multiple unit dwelling.

Detective Nichols testified that after the purchase was completed, he obtained a search warrant. The search warrant described the residence as located:

> from the intersection of Crossland Drive and Tally Drive, turn onto Tally Drive and travel in a northerly direction approximately 100 feet to the second residence on the left side of the street. The residence to be searched is pink in color with white trim

and a wrought iron security door on the front door. The residence to be searched has the address of 1244 Tally Drive, the number 1244 appears on the mailbox in the front of the residence.

Detective Nichols testified that during the execution of the search warrant, they found a minor inside the residence purchasing drugs. Detective Nichols further stated he signed an incident report after the search was completed, which listed the petitioner's residence number as "1244 A." The record is silent as to whether the officers executing the search warrant actually entered Apartment B.

Defense counsel testified the petitioner's residence was located near his office, and he was able to view the residence from his office window. He stated that although he did not enter the residence or walk around the property, he and the petitioner viewed the residence from his office on various occasions. Defense counsel did not recall the petitioner advising him that the residence was a multiple unit dwelling. He further stated the petitioner did not inform him that the officers entered another apartment during the search. Defense counsel also testified he made no observations suggesting that the residence was a multiple unit dwelling.

Defense counsel testified he and the petitioner discussed the residence with regard to its proximate location to a school. He stated he was concerned with the sale of drugs occurring within 1,000 feet of a school in violation of the Drug Free School Zone Act. *See* Tenn. Code Ann. § 39-17-432. The petitioner measured the distance between his residence and the school, and the residence was located within 1,000 feet of the school. Defense counsel stated the assistant district attorney general indicated that he intended to reindict the petitioner for this offense. Defense counsel also informed the petitioner that he could face a minimum fifteen-year sentence under the Drug Free School Zone Act, which he would be required to serve day for day. *See id.*

The petitioner did not testify at the post-conviction hearing.

## II. POST-CONVICTION COURT'S FINDINGS

The post-conviction court found defense counsel was not deficient in failing to file a motion to suppress evidence obtained during the execution of the search warrant. It stated defense counsel viewed the residence, and there was no indication that the residence was a multiple unit dwelling.

The post-conviction court further found that even if defense counsel were deficient for failing to file a motion to suppress, the petitioner did not establish prejudice. The court noted defense counsel would not have changed his opinion had he researched the issue. It observed that according to Harris' testimony, the outward appearance of the residence indicated it was a single unit dwelling. Furthermore, Detective Nichols testified he observed people enter and exit the residence only

through the front door.  The post-conviction court concluded the motion to suppress would not have been granted had it been filed and denied the petition for post-conviction relief.[1]

## III.  STANDARD OF REVIEW

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise.  State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).  Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings.  Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997).  This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court.  State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001).  However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness.  Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution.  State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).  When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently, and, but for counsel's errors, petitioner would not have pled guilty but would have, instead, insisted upon going to trial.  Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

## V.  VALIDITY OF THE SEARCH WARRANT

The petitioner contends defense counsel was ineffective in failing to contest the validity of the search warrant.  He maintains the search warrant failed to describe the subunit of the multiple unit dwelling intended to be searched with sufficient definiteness, and, if a motion to suppress had been filed, it would have been granted.  We disagree in both respects.

---

[1]The post-conviction court did not set forth in writing its findings of fact and conclusions of law as required by Tennessee Code Annotated section 40-30-211(b).  This court has previously noted that the failure to file written findings may be harmless when the post-conviction court orally pronounces its findings from the bench.  *See* State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987).  The post-conviction court in the instant case made detailed oral findings; thus, the failure to file written findings is harmless error.  *See* Tenn. R. App. P. 36(b).

## A. Deficiency

At the hearing for post-conviction relief, defense counsel testified he observed the petitioner's residence and believed it to be a single unit dwelling. Harris testified the two electric meters behind the residence and the "1244A" label beside the front door were the only outward indications of the possible existence of multiple dwellings. In addition, defense counsel stated he and the petitioner discussed the residence on several occasions, and the petitioner did not inform him that the residence was a multiple unit dwelling. Furthermore, the petitioner did not testify at the post-conviction hearing; thus, no evidence contradicting defense counsel's testimony was presented. Therefore, we conclude the petitioner failed to establish that defense counsel was deficient by not contesting the validity of the search warrant.

## B. Prejudice

Although we need not address the prejudice prong of the petitioner's ineffective assistance of counsel claim, *see* Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996), we elect to do so. We conclude that even if defense counsel had filed a motion to suppress the evidence obtained during the execution of the search warrant, the motion would not have been granted.

The Fourth Amendment to the United States Constitution requires a search warrant to contain a description of the place to be searched with such particularity that the searching officer may with reasonable effort ascertain and identify the intended place. State v. Conaster, 958 S.W.2d 357, 359 (Tenn. Crim. App. 1997). Article I, Section 7 of the Tennessee Constitution prohibits general warrants and Tennessee Code Annotated section 40-6-103 requires search warrants to describe particularly the property and the place to be searched. *Id.*

A search warrant directed against a multiple unit dwelling must describe "the subunit intended to be searched with sufficient definiteness to exclude the search of an unintended subunit." State v. Stinnett, 629 S.W.2d 1, 3 (Tenn. 1982). However, courts have recognized an exception to this rule in cases where "the police were understandably misled into believing that a house was a single dwelling unit." *Id.* In Stinnett, the Tennessee Supreme Court held a search warrant was valid even though the warrant failed to indicate the residence searched, a house with a separate apartment, was a multiple unit dwelling. *Id.* Although an informant told the law enforcement officer who secured the warrant that there was a separate apartment, the "main part of the house," where the informant stated the suspect resided, appeared to be a single unit dwelling. *Id.*

In the case at bar, the only external indicia of the possible existence of multiple dwellings were the two electric meters behind the house and the "1244A" label beside the front door. In addition, Detective Nichols testified that during his surveillance of the residence, those who entered and exited the residence did so through the front door. The detective also stated that when the informant described the petitioner's residence, the informant never indicated it was a multiple unit dwelling. Therefore, we conclude the detective was justified in failing to specifically note in the property description that the house was a multiple unit dwelling. We also note that the record is

silent as to whether the officers actually entered Apartment B. Regardless, even if they did, this would not render the search of the petitioner's apartment invalid. *See* <u>State v. Carlos Haynes</u>, No. W2002-00315-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 964, at **9-10 (Tenn. Crim. App. Nov. 6, 2002, at Jackson).

We conclude that the search warrant described the place to be searched with definite particularity. The search warrant described the exact location of the petitioner's residence, the color of the house, the wrought iron security door, the address of the residence, and the number 1244 which appeared on the mailbox. Thus, even if defense counsel had filed a motion to suppress contesting the validity of the search warrant, it would not have been granted.

## CONCLUSION

The petitioner failed to establish that defense counsel was deficient or that he was prejudiced. He has not shown that he would not have pled guilty if a motion to suppress had been filed. Therefore, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE