IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 26, 2005 Session

## STATE OF TENNESSEE v. RYCINE ELLISON & MANDRELL CHRISTMON

**Appeal from the Criminal Court for Davidson County**
**No. 2003-A-616 Steve R. Dozier, Judge**

—————————

**No. M2004-00446-CCA-R3-CD - Filed May 25, 2005**

—————————

The appellants, Rycine Ellison and Mandrell Christmon, appeal on a certified question of law after their guilty pleas. On appeal, they challenge the trial court's denial of their motions to suppress. For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Richard McGee and James O. Martin, Nashville, Tennessee for appellant, Rycine Ellison; Mark C. Scruggs, Nashville, Tennessee, for the appellant, Mandrell Christmon.

Paul G. Summers, Attorney General & Reporter; Richard H. Dunavant, Assistant Attorney General; Victor S. Johnson, District Attorney General, and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Factual Background

In March of 2003, the Davidson County Grand Jury indicted Mr. Christmon for possession of twenty-six (26) grams or more of cocaine with intent to deliver, possession of not more than ten (10) pounds of marijuana with intent to deliver, unlawful possession of a firearm, conspiracy to possess 300 grams or more of cocaine and possession of 300 grams or more of cocaine with the intent to deliver. Mr. Ellison was indicted for possession of not more than ten (10) pounds of marijuana with intent to deliver, conspiracy to possess 300 grams or more of cocaine, and possession of 300 grams or more of cocaine with intent to deliver.

Both Mr. Ellison and Mr. Christmon filed motions to suppress the evidence. Mr. Christmon argued that the "stop/seizure of the Defendant and subsequent search of his person and vehicle were made without reasonable suspicion and/or probable cause." Mr. Ellison's motion to suppress challenged both the search of his person and vehicle as well as the subsequent search of his residence.

The trial court held a hearing on the motions to suppress on August 15, 2003. At the hearing, Sergeant James McWright of the Metro Nashville Police Department Drug Task Force testified that he was assisting the TBI with a drug operation on November 19, 2002. During some "down time," Sgt. McWright conducted some visual surveillance of Mr. Ellison's apartment off Bell Road in Nashville.[1] When he arrived, Sgt. McWright noted that Mr. Ellison's black Yukon was parked outside the apartment building.

At around 12:30 p.m., Sgt. McWright observed Terrell Jackson arrive in a green Cadillac and enter Mr. Ellison's apartment. When he arrived at the apartment, Mr. Jackson was not carrying anything. Sgt. McWright testified that Mr. Jackson remained inside the apartment for approximately five (5) minutes, then exited carrying a "gym bag" over his shoulder. Sgt. McWright could tell that the bag was "fairly weighty" by the way that Mr. Jackson was carrying it on his shoulder. According to Sgt. McWright, his training and expertise led him to believe that he had just witnessed a "typical dope deal."

As Mr. Jackson exited the apartment, Sgt. McWright called officers Mike Lee and Aaron Thomas to the scene. All three (3) officers followed Mr. Jackson in his Cadillac as he left the area. Sgt. McWright observed Mr. Jackson run a red light, but the officers chose not to pull Mr. Jackson over at that time because the road had a very narrow shoulder. The officers followed Mr. Jackson until he pulled into a parking place at an apartment complex. At that point they "turned on [their] emergency equipment and approached the car." A search of the vehicle found four (4) pounds of marijuana in the bag that Mr. Jackson carried out of Mr. Ellison's residence.

At some point prior to the search of Mr. Jackson's vehicle, Sgt. McWright, who was not on the scene of that search, was advised that Mr. Jackson was talking on his cellular phone. Worried that Mr. Jackson might be warning Mr. Ellison that the police were about to arrest him, Sgt. McWright "reestablished surveillance" at Mr. Ellison's apartment.

Approximately five (5) minutes later, Sgt. McWright saw Mr. Christmon leaving Mr. Ellison's apartment with a brown paper sack with handles. Sgt. McWright testified that Mr. Christmon was looking around in both directions in the parking lot, behavior identical to someone who had been "tipped off." Mr. Christmon went to his black Toyota Camry and put the bag inside

_____

[1]Sgt. McWright had received information from Metro Police Officer Mike Garbo that Mr. Ellison was selling drugs from his apartment. The initial tip came from someone who had been arrested in Murfreesboro about six (6) months prior to the date that Sgt. McWright conducted visual surveillance of the apartment.

one of the back doors.  Mr. Ellison exited the apartment at that time, carrying two (2) large white trash bags.  Mr. Ellison placed the bags in the back of his Yukon and walked over to Mr. Christmon. The two (2) men began talking and both continued to look around the parking lot while they were talking.  The two (2) men left in their respective vehicles.

Sgt. McWright asked Officer Thomas to assist him in following Mr. Ellison and Mr. Christmon.  Other patrol cars joined them.  At some point, the officers were notified that the search of Mr. Jackson's vehicle resulted in the discovery of four (4) pounds of marijuana.  The officers then stopped Mr. Ellison in his Yukon as he pulled into a housing complex.  Mr. Ellison was notified of Mr. Jackson's arrest and was notified that he was under arrest for selling controlled substances.  Sgt. McWright asked Mr. Ellison if he had any drugs on him and Mr. Ellison replied that he had five (5) pounds "in the back."  When the officer opened the back door of the Yukon, they found two (2) white trash bags.  One of the bags contained empty "marijuana wrappings" with residue, and the other held five (5) pounds of marijuana.  The officers then advised Mr. Ellison of his Miranda rights. Mr. Ellison refused to give consent to allow the officers to search his residence.

Officers stopped Mr. Christmon's Camry about one (1) block further down the street.  When the officers searched Mr. Christmon, they found a bag of powder cocaine on his person.  Mr. Christmon was advised of his Miranda rights.  Officer Thomas could see the brown paper bag described by Sgt. McWright sitting inside Mr. Christmon's car.  When asked about the bag, Mr. Christmon pointed to Mr. Ellison and said something like, "Ask my uncle."  Mr. Thomas removed the bag from the vehicle, smelled it and opened it up.  The bag contained five (5) pounds of marijuana.  The search of Mr. Christmon's vehicle also resulted in the discovery of a handgun, four and one-half (4 1/2) ounces of cocaine and $7,000 in thousand-dollar bundles.  Small quantities of marijuana and cocaine were also found in the car's console.

Officer Thomas then went to the scene where Mr. Ellison was arrested.  At that point, Sgt. McWright sent Officer Thomas to get a search warrant for Mr. Ellison's apartment.  After the warrant was received, the officers searched the apartment.  At the apartment, the officers discovered two (2) kilos of cocaine.

At the conclusion of the hearing, the trial court took the matter under advisement.  In an order entered September 8, 2003, denying the motions to suppress, the trial court made the following conclusions of law:

> The defendants rely on State v. Otey, 2002 WL 560960, (Tenn. Crim. App. April 16, 2002) to make the case that an individual leaving a suspected drug house is not itself probable cause to stop that person.  However, Otey is distinguishable from the case before this Court.  Defendant Jackson was observed entering the residence empty handed and leaving with a bag.  In Otey, the defendant entered and left the residence empty handed.  In the case before the Court, officers had information that the bag the suspect left with contained a large quantity of marijuana. Further, the officer in Otey had a search warrant for that particular residence not any

information on any particular individual. The Court is of the opinion that the case before this Court is highly distinguishable from <u>Otey</u> for the foregoing reasons.

The defendants argue it was the officers' intent to stop the defendants [sic] vehicle regardless of the circumstances. However, the proof at the hearing does not support this contention. . . . The Court finds that based on the observations of Sergeant McWright, and the circumstances made known to him from the search of defendant Jackson's vehicle, his conduct in ordering the stop and search of the defendants' [sic] Ellison and Christmon was objectively justified.

The remaining issue before the Court is whether or not the search warrant executed upon the residence of the defendant is supported by probable cause.

. . . .

The Court finds that the stop of the defendants' vehicles was supported by probable cause. Therefore, the basis of information contained in the warrant, namely the findings of contraband in the defendants [sic] vehicles, provided the magistrate with a "substantial basis" for concluding that a search warrant would yield evidence of wrongdoing. The warrant contains additional information for the basis of the warrant aside from the stop of the defendants' vehicles. Having found that the stop of the defendants [sic] vehicles were [sic] appropriate, the Court is of the opinion that the search warrant is constitutionally sufficient. Therefore, the Court is of the opinion that the defendants' motions to suppress should be denied.

On January 30, 2004, Mr. Christmon pled guilty to possession of more than twenty-six (26) grams of cocaine with the intent to deliver and unlawful possession of a firearm. The charges for possession of more than ten (10) pounds of marijuana and conspiracy to possess 300 grams or more of cocaine were dismissed. For the cocaine conviction, Mr. Christmon received a twelve-year sentence as a Range I standard offender. Additionally, Mr. Christmon was sentenced to two (2) years for the unlawful possession of a firearm charge, to be served concurrently to the sentence for possession of cocaine. Mr. Christmon also received a $2,000 fine. Mr. Ellison pled guilty to possession of more than 300 grams of cocaine with intent to deliver. The trial court dismissed the charges for possession of more than ten (10) pounds of marijuana and conspiracy to possess 300 grams or more of cocaine. Mr. Ellison was sentenced to fifteen (15) years as a Range I standard offender and received a $2,000 fine. Both Mr. Ellison and Mr. Christmon reserved certified questions of law in accordance with Rule 37 of the Tennessee Rules of Criminal Procedure.

In an agreed order, Mr. Ellison's certified question of law was stated as follows:

Whether the Defendant was the subject of an unlawful arrest and/or seizure by Metropolitan Police Officers such that the subsequent search violated his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution

and Article I, Section 7 of the Tennessee Constitution on or about November 19, 2002, when he was stopped and arrested and his vehicle searched by officers of the Metropolitan Police Department. The seizure was without the benefit of an arrest or search warrant. The seizure resulted in the discovery of a quantity of controlled substances. This seizure was the basis of the issuance of a search warrant at the Defendant's residence which resulted in the discovery of the cocaine which the Defendant pled guilty to possession in Count 5. It is the Defendant's position that without the evidence seized from him at the initial warrantless stop and seizure, there was [sic] insufficient facts to support the issuance of the search warrant for his residence.

Similarly, an agreed order was filed memorializing Mr. Christmon's certified question for purposes of appeal. The issue was presented as follows:

Whether the Defendant was subject of an unlawful arrest and/or seizure by Metro police and subsequent search (in violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 6 of the Tennessee Constitution) on or about November 19, 2002, when his vehicle was stopped and searched and he was searched as well and various contraband was discovered.

Subsequently, Mr. Christmon and Mr. Ellison both filed timely notices of appeal.

Analysis

At the outset, we note that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also State v. Lawrence, 154 S.W.3d 71, 75 (Tenn. 2005). As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn.1997). "Questions of the credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Lawrence, 154 S.W.3d at 75 (quoting Odom, 928 S.W.2d at 23).

Mindful of the standard of review on review of a motion to suppress, we acknowledge that our review is constrained by the fact that the appellants' appeals are based solely on a certified question of law. When an appeal is brought by certified question of law, no issue beyond the scope of the certified question may be considered by this Court. State v. Pendergrass, 759 S.W.2d 647, 650 (Tenn. 1988). Therefore, the only question we may properly address is the propriety of the trial court's denial of the motions to suppress.

Appellants Christmon and Ellison contend that their arrests were unlawful. Specifically, Mr. Christmon argues that because the arrest was unlawful, the search of his person and vehicle that yielded the cocaine and weapon were invalid. Mr. Ellison contends that the seizure of evidence from his vehicle was improper and; therefore the subsequent seizure of evidence at his apartment was improper. The State argues that the evidence does not preponderate against the judgment of the trial court.

The trial court made the following findings of fact:

Sergeant McWright testified that one of his officers received a tip that an individual was selling narcotics out of an apartment. This particular confidential informant told the officers that he had purchased large quantities of marijuana at this residence.[2] After receiving the information and while assisting the T.B.I. on another unrelated surveillance, Sergeant McWright traveled to this particular apartment to conduct a brief surveillance. Based on his previous surveillance of the residence, Sergeant McWright recognized the apartment owner's vehicle parked outside. While monitoring the apartment, the officer noticed the defendant [Jackson] arrive and enter the apartment empty handed. According to sergeant McWright's testimony, the defendant [Jackson] exited the apartment approximately 5-10 minutes later carrying a black briefcase that appeared to be heavy. The defendant immediately got in his vehicle and left the residence.

Sergeant McWright testified that he has twenty-eight years experience as a law enforcement officer, and is currently assigned to the twentieth judicial drug task force. Based upon his experience, Sergeant McWright opined that defendant Terrell Jackson went into the apartment to purchase narcotics. Based on these observations, Sergeant McWright notified other officers in the area of his suspicions and directed them to follow Jackson's vehicle. A few miles down the road the defendant ran a red light in the presence of the officers. The officers did not immediately stop the defendant's vehicle when they observed the traffic violation as there was not enough space on the shoulder of the road to conduct a safe stop. The defendant continued down the road for about a mile and pulled into an apartment complex. Sergeant McWright instructed Officer Lee to execute a stop of the defendant's vehicle in the parking lot of the complex. Officer Lee activated his emergency equipment and pulled his car in behind the defendant's vehicle. The defendant immediately exited his vehicle and locked the door. Officer Lee asked the defendant for his license and registration, however the defendant was not in possession of his driver's license. He stated that his driver's license was upstairs in his office. Officer Lee accompanied the defendant upstairs to retrieve his driver's license. Thereafter, they returned to the parking lot and officer Lee retained the defendant's identification and went back [to] his cruiser to issue the defendant a metropolitan police citation. Officer Lee testified

---

[2] Sergeant McWright testified that he knew this was the residence of defendant Rycine Ellison.

that after he issued the citation he requested permission from the defendant to run his canine unit around the defendant's vehicle. The defendant declined the officer's request, but the officer proceeded to walk his canine about the defendant's vehicle. Almost immediately, the canine alerted to the trunk of the vehicle wherein Officer Lee found a large quantity of marijuana in a bag matching the description given by Sergeant McWright.

Sergeant McWright testified that he received information from Officer Aaron Thomas that defendant Terrell Jackson was on his cell phone during the stop of his vehicle. Believing that defendant Jackson was attempting to "tip off" defendants Ellison and Christmon, Sergeant McWright traveled back to defendant Ellison's residence. Upon arriving, Sergeant McWright noticed defendant Christmon exit the residence and place a brown paper sack in the back of his Yukon sport utility vehicle.[3] Sergeant McWright testified that the defendant appeared extremely nervous and kept carrying white trash bags to his vehicle which appeared to be heavy. The Court heard proof that the defendant's residence has a trash receptacle in the breeze way of the apartment and there would be no reason to take trash from the residence to another receptacle. Sergeant McWright followed the defendants' vehicles and made the decision to stop the defendants after he learned that a large quantity of marijuana was found in defendant Jackson's vehicle. As previously stated, the defendant Jackson was seen earlier that day entering defendant Ellison's residence empty handed and exiting with the described bag.

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures by law enforcement officers. A search conducted without a warrant is presumptively unreasonable and at a suppression hearing regarding such a search the State bears the burden of proving that the warrantless search was reasonable. State v. Coulter, 67 S.W.2d 3, 41 (Tenn. Crim. App. 2001). This means that the State must prove that the warrantless search or seizure was conducted pursuant to one of the narrowly-defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

In Tennessee, an officer may arrest without a warrant in certain situations. These exceptions to the warrant requirement are set forth in Tennessee Code Annotated section 40-7-103. That statute provides, in part, that an officer may arrest a person without a warrant: "(1) for a public offense committed or a breach of the peace threatened in the officer's presence; (2) when the person has committed a felony, though not in the officer's presence; (3) when a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it; (4) on a charge made, upon reasonable cause, of the commission of a felony by the person arrested . . . ." Tenn. Code Ann. § 40-7-103.

---

[3]The record actually indicates that Mr. Christmon drove a Camry, while Mr. Ellison drove a Yukon.

From the statute, it is clear that an officer may make a warrantless arrest "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." Tenn. Code Ann. § 40-7-103(a)(3). Simply stated, the officer must have "probable cause to believe the person to be arrested has committed the crime." State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000). Probable cause depends on whether the facts and circumstances and reliable information known to the officer at the time of arrest were "'sufficient to warrant a prudent [person] in believing that the [individual] had committed or was committing an offense.'" State v. Bridges, 963 S.W.2d 487, 491 (Tenn. 1997) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964); State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982)). Probable cause must be more than a mere suspicion. Melson, 638 S.W.2d at 350.

Police may initiate an investigatory stop of an automobile if they have reasonable suspicion, supported by specific and articulable facts, that the occupant of the vehicle has either committed a criminal offense or is about to commit a criminal offense. State v. Hord, 106 S.W.3d 68, 71 (Tenn Crim. App. 2002). Although less intrusive than a full-blown arrest, an investigatory detention is subject to the constitutional protection of the Fourth Amendment against "unreasonable searches and seizures." Terry v. Ohio, 392 U.S. 1, 20 (1968). Reasonable suspicion must be based on specific and articulable facts indicating that a criminal offense has been or is about to be committed. Terry, 392 U.S. at 21; State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether reasonable suspicion is based on specific and articulable facts, we must consider the totality of the circumstances, including the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294. We must also consider the rational inferences and deductions that a trained police officer may draw from the circumstances. Watkins, 827 S.W.2d at 294 (citing Terry, 392 U.S. at 21).

The appellants cite State v. Keith A. Otey, No. M2000-01809-CCA-R3-CD, 2002 WL 560960 (Tenn. Crim. App., at Nashville, April 16, 2002), to support their argument that their arrest was unlawful. In Otey, officers witnessed the defendant enter the residence of a known heroin dealer, "touch hands" with the dealer, and engage in conversation with someone else at the residence. The defendant was not seen exchanging any objects with the drug dealer and was not seen leaving the premises with any items. The officers stopped the defendant and, after being questioned, he admitted that he had drugs in his pocket. On appeal, this Court determined that the defendant's presence at the drug dealer's residence, without more, did not establish a reasonable suspicion to justify the stop of the defendant's vehicle. Id. at *5. As a result, this Court determined that the trial court erred in denying the defendant's motion to suppress the fruits of the illegal investigatory stop. Id. We agree with the trial judge that the case herein is distinguishable from Otey. In Otey, the officers did not witness any act by the defendant that was illegal or suspicious. The evidence in the case herein clearly indicates that Sgt. McWright had a reasonable suspicion that a criminal offense had been committed such that would justify the stop of Mr. Ellison and Mr. Christmon. Further, it is not difficult, given the evidence introduced at the suppression hearing, to ascertain the precise point at which the "reasonable suspicion" of Sgt. McWright to stop Mr. Ellison and Mr. Christmon ripened into "probable cause" for the arrest of Mr. Ellison and Mr. Christmon. Sgt. McWright saw

Terrell Jackson leave Mr. Ellison's apartment with a bag. Sgt. McWright later saw Mr. Ellison and Mr. Christmon loading bags into their own vehicles. Sgt. McWright was then notified that Mr. Jackson was arrested carrying four (4) pounds of marijuana in his vehicle in the bag he had taken from Mr. Ellison's apartment. An act occurring within the view of one officer is, in legal effect, within the presence and view of the other cooperating officers. State v. Ash, 12 S.W.3d 800, 805-06 (Tenn. Crim. App. 1999). The observations of Sgt. McWright, coupled with the discovery of the large quantity of drugs on Mr. Jackson, were sufficient to warrant a prudent person to believe that the appellants had committed the felony of selling a controlled substance. This issue is without merit.

Finally, Mr. Ellison contends that the large quantity of cocaine found in his apartment should be excluded because information contained in the search warrant application was obtained as the result of his illegal arrest. Because we determine that the arrest was valid, we cannot conclude that the information concerning the activities of Mr. Ellison, Mr. Christmon, and Mr. Jackson was improperly included in the search warrant affidavit. The standard of review for a magistrate's determination of probable cause for a search warrant is whether there was a substantial basis for concluding that a search warrant would yield evidence of wrongdoing. State v. Stepherson, 15 S.W.3d 898, 903 (Tenn. Crim. App. 1999). The information used herein to obtain the search warrant resulted from both the arrests of Mr. Ellison, Mr. Christmon and Mr. Jackson as well as the initial tip from the confidential informant. The trial court properly determined that there was probable cause for the issuance of the search warrant. This issue is without merit.

Conclusion

After reviewing the record of the suppression hearing and the trial judge's findings of fact, we are unable to determine that the evidence preponderates against the trial judge's findings. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE