# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 21, 2014

## STATE OF TENNESSEE v. LAQUITA MONIQUE HOGAN

**Appeal from the Circuit Court for Maury County**
**No. 21747     Stella L. Hargrove, Judge**

---

**No. M2013-02340-CCA-R3-CD - Filed November 3, 2014**

---

This direct appeal presents a certified question of law pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure.  After the trial court denied her motion to suppress, Defendant, Laquite Monique Hogan, entered a guilty plea in the Maury County Circuit Court to facilitation of possession of a schedule II drug for sale and was sentenced to three years to be suspended and served on probation.  Defendant properly reserved the following certified question of law: "whether there was a sufficient nexus that continued to persist at the time the search warrant was executed due to the fact that the location of the alleged sales was away from the residence and the affidavit does not include facts that Jason Coleman was seen coming and returning to his home from the sale which was to have occurred 96 hours ago; whether the alleged facts that Mr. Coleman was monitored leaving from his home and returning within 30 days of the execution of the warrant was stale information and whether the record supports the finding that both prongs of Aguil[]ar-Spinelli have been satisfied." After a thorough review of the record and applicable authorities, we conclude that Defendant is not entitled to relief in this appeal.  Accordingly, we affirm the trial court's order denying Defendant's motion to suppress, and we affirm Defendant's judgment of conviction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. J., joined.  JEFFREY S. BIVINS, J., not participating.

Robin Farber, Columbia, Tennessee, for the appellant, Laquita Monique Hogan.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; T. Michel Bottoms, District Attorney General; and Brent Cooper, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

Defendant challenges the trial court's finding of probable cause based on the supporting affidavit. As stated in her brief, Defendant has narrowed the issue stated in the reserved certified question of law. Defendant's brief states the issue on appeal as follows: "Whether the nexus between the criminal activity and the place to be searched continued to persist at the time the warrant was issued?" Defendant makes arguments in the argument section of her brief regarding the other components of the certified question, that the affidavit fails to establish a nexus between the alleged criminal activity and the location to be searched, and that the affidavit fails to satisfy either prong of the *Aguilar-Spinelli* test, being veracity and basis of knowledge. Defendant's precise statement of the issue on appeal, however, pertains only to whether the nexus persisted. The State responds that the trial court properly denied Defendant's motion to suppress. Despite Defendant's failure to precisely state the entire reserved question of law, we will address the issues raised in the certified question of law and properly argued on appeal.

We will uphold a trial court's findings of fact at a suppression hearing unless the evidence preponderates to the contrary. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id*. "We afford to the party prevailing in the trial court the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). We review, however, a trial court's application of the law to the facts under a de novo standard of review. *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2006).

Under both the Tennessee and United States Constitutions, no search warrant may be issued except upon probable cause, which "requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." *State v. Smotherman*, 201 S.W.3d 657, 662 (Tenn. 2006). Tennessee requires a written and sworn affidavit, "containing allegations from which the magistrate can determine whether probable cause exists," as "an indispensable prerequisite to the issuance of a search warrant." *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). The affidavit must contain more than mere conclusory allegations on the part of the affiant. *Id*. The standard to be employed in reviewing the issuance of a search warrant is "whether the issuing magistrate had 'a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *Smotherman*, 201 S.W.3d at 662 (quoting *State v. Ballard*, 836 S.W.2d 560, 562 (Tenn. 1992)).

Our supreme court has explained that, in order to establish probable cause for the issuance of a search warrant, the underlying affidavit "must set forth facts from which a

reasonable conclusion might be drawn that the evidence is in the place to be searched." *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993) (citations omitted). "The nexus between the place to be searched and the items to be seized may be established by the type of crime, the nature of the items, and the normal inferences where a criminal would hide the evidence." *Id*. (citation omitted); *see also State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009) (recognizing that an affidavit in support of a search warrant "must show a nexus among the criminal activity, the place to be searched, and the items to be seized") (citing *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002); *Smith*, 868 S.W.2d at 572)). "In determining whether probable cause supports the issuance of a search warrant, reviewing courts may consider only the affidavit and may not consider other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Id*. (citing *State v.. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005)).

Defendant's charges resulted from a search of a residence located at 1611 South High Street in Columbia. At the hearing on Defendant's motion to suppress, defense counsel conceded that Defendant resided at the same address as Jason Coleman and that she was present at the residence when the search warrant was executed. The affiant in the affidavit submitted in support of issuance of the search warrant was Agent David Stanfill of the Maury County Sheriff's Drug Unit. The affidavit states in relevant part as follows:

<u>Statement of Facts in Support of Probable Cause</u>

. . . .

Within the past 96 hours your Affiant has made a controlled purchase of marijuana from "Jason", aka Jason Coleman. Your Affiant has used a co-operating individual (Known as C.I. from here on) to make several controlled purchases, during the last 30 days, of Marijuana from a B/M known as "Jason", and later identified as Jason Coleman, at the said address. The C.I., during the purchases, was met at a predetermined location where the C.I. and the C.I.'s vehicle were searched for illegal contraband and nothing was found. The C.I. was then fitted with audio and video recording equipment and given buy money to make the purchases. The C.I. was then followed to the Kwik Sak Market, located at West 17th St. and Carmack Blvd. where the sales took place. The C.I. was monitored and was observed during the transactions and was followed back to the predetermined location where the C.I. did turn over a quantity of Marijuana. The C.I. and their vehicle were then searched again and nothing was found. There were two deals done where Officers set up and observed Jason Coleman's residence. Jason Coleman was seen exiting the apartment and go to the Kwik Sak Market and make the sale to the C.I. After the deal was

done Jason Coleman was observed returning to the same apartment he had left. Your affiant has made contact with the owner of the residence and confirmed that this is Jason Coleman's residence. The owner states that Jason Coleman rents the apartment and has been staying there for approximately 8 months. Jason leaves the apartment and makes the sale and returns to the same said apartments. Therefore your affiant believes that there will be Narcotics and proceeds from the sales of Narcotics located at the said residence.

At the suppression hearing, the trial court heard arguments of counsel and examined the affidavit. No testimony or other evidence was presented. The trial court denied Defendant's motion to suppress, finding as follows:

[T]he Court has to look at this affidavit as a whole, and there's enough there to satisfy this Court, insofar as the nexus.

Now, I know it sounds a little confusing. My reading of the affidavit and the reason that I believe that the issuing Magistrate signed this and issued it was, there's enough there to document how they treated the C.I., insofar as a predetermined location searched, fitted with an audio and video recording equipment, given the money, and then also searched after the buy was made. I think there's enough there and I think there's enough there under [State v.] Saine[, 297 S.W.3d 199, 206 (Tenn. 2009)] .

It doesn't matter in this Court's mind that every time they saw him exit and enter the apartment. There's enough there with the routine, using that apartment.

And I don't know if the two deals – I don't know what that means, but they do have deals within the last 30 days and they do have a buy within the past 96 hours.

So taken as a whole, the Court is going to say and rule that the affidavit is good.

I'm not concerned about staleness under case law, and I think I've covered the other issues of Aguilar and Spinelli and the nexus to make a ruling here.

. . . .

-4-

> [W]e['ve] got a difference here with the last 96 hours compared to *Archibald*. I am familiar with *Archibald* and *Booker*. I'm going to deny the motion to suppress.

Defendant contends that the affidavit fails to establish a sufficient nexus between the criminal activity and the residence to be searched. Defendant asserts that the affidavit "obviously . . . lacks any facts supporting the supposition that drugs would be recovered at the residence."

We recognize Defendant's argument that there must be a "nexus among the criminal activity, the place to be searched, and the items to be seized." *See State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009). We conclude that there existed such a nexus, which was created by police officers' personal observations of Jason Coleman leaving and returning directly to his residence before and after the drug sales, as well as Detective Stanfill's statements that he confirmed with the landlord of the apartment that Jason Coleman resided there and that in Detective Stanfill's experience, he believed that contraband would be located in a drug seller's residence.

In *State v. Saine*, the Tennessee Supreme Court held that circumstances similar to those in this case constituted probable cause to issue a search warrant. *State v. Saine*, 297 S.W.3d 199, 206-07 (Tenn. 2009). In that case, a detective swore by affidavit that he observed the defendant leave his residence, sell drugs to a confidential informant, and return directly to his residence. *Id*. at 203-04. The detective also stated in the affidavit that, in his experience, drug sellers commonly stored drugs, proceeds, and records thereof in their residences or "other locations which they control." *Id*. at 202. The supreme court explained that an affidavit lacking "definite proof that the seller keeps his supply at his residence" gives probable cause to search a location as long as the affidavit contains "some additional facts," such as that the seller went to his home either before or after the sale, "which would support the inference that the supply is probably located there." *Id*. (quoting 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) (4th ed. 2004 & Supp.2008-09) (footnotes omitted). The court concluded that, because the detective stated his knowledge of drug sellers' storage practices and because the detective observed the defendant in that case travel directly to the controlled buy location from his home and directly return, the magistrate had probable cause to believe the home would contain evidence of his drug activity. *Id*. at 206-07.

Here, the affidavit states that Detective Stanfill confirmed Jason Coleman's place of residence through his landlord. The affidavit also states that based on Detective Stanfill's experience and training, he is aware that drug dealers often hide contraband and proceeds of drugs sales in their residences. Based on the direct observations of law enforcement officers

on two occasions that Jason Coleman left and then returned to his residence immediately before and after a drug exchange, we conclude that the affidavit was sufficient to establish a nexus between the criminal activity and Jason Coleman's residence.

Defendant also contends that the affidavit did not contain sufficient information to establish how long the nexus would persist. In *State v. Archibald*, this court affirmed the trial court's grant of a motion to suppress. 334 S.W.3d at 212. In *Archibald*, the affidavit stated that, within the last 72 hours, a confidential informant was under surveillance "and was observed walking to the rear door of the apartment number 5A" and entering the apartment through the door. *Id.* at 213-14. The confidential informant could be heard by officers talking with "someone" inside the residence, and then he was seen exiting the residence through the rear door. *Id.* at 214. He walked back to the officers and gave them the contraband, "which was believed by the [confidential informant] to be crack cocaine. . . ." Based upon this information, officers sought a search warrant for the premises. *Id.*

In *Archibald*, this court concluded that the evidence preponderated against the trial court's finding that a nexus did not exist between the criminal activity and the residence to be searched based on the direct observations of the detective as stated in the affidavit. *Id.* at 215. However, we held that "[a]lthough the affidavit in this case contained information establishing a nexus between the seller's apartment and criminal activity, it contained no information tending to establish how long that nexus would persist." *Id.*

Defendant argues that the information contained in the affidavit in this case was "stale" because it was up to 30 days old. In *Archibald*, we held that the information contained in the affidavit was stale, not because the officer's observations were 72-hours old, but because the affidavit "did not . . . contain any facts supporting an inference that the person who sold drugs to the CI was more than a one-time visitor to the apartment." Therefore, "the information in the affidavit became stale as soon as enough time had passed for such a one-time seller to leave the apartment." *Id.* We recognized in *Archibald* that the affidavit in that case "would have been sufficient had it contained information reliably establishing ongoing criminal activity." *Id.* If the illegal activity is described as ongoing, it is generally held that the affidavit does not become stale with the passage of time. *State v. Hayes*, 337 S.W.3d 235 (Tenn. Crim. App. 2010) (citing *State v. Stepherson*, 15 S.W.3d 898, 903 (Tenn. Crim. App. 1999); *State v. Thomas*, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991).

We conclude that the affidavit in this case established ongoing criminal activity. Direct observations by law enforcement officers through a course of investigation within 30 days of the issuance of the search warrant, combined with Detective Stanfill's statement that

he believed drugs and proceeds of drug sales would be located at the residence based on his experience, was sufficient to establish that the nexus would persist.

Finally, Defendant contends that the facts in the affidavit fail to satisfy either prong of *Aguilar-Spinelli*. When probable cause for issuance of a search warrant is based upon information from a confidential informant, the two-pronged *Aguilar-Spinelli* test adopted in *State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn. 1989), must be satisfied. Under the first, "basis of knowledge" prong of the test, "facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place." *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Under the second, or "veracity" prong of the test, "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." *Id*. (citation omitted). Although independent police corroboration may compensate for deficiencies in either prong, each prong of the test must be satisfied to establish probable cause. *Smotherman*, 201 S.W.3d at 662 (citing *State v. Williams*, 193 S.W.3d 502, 507 (Tenn. 2006)); *Jacumin*, 778 S.W.2d at 436.

There is nothing in the affidavit that was used to establish probable cause based on information provided by the cooperating individual ("C.I.") in this case. The affidavit states that several controlled purchases using a cooperating individual were arranged by law enforcement officers. The C.I. and the C.I.'s vehicle were searched to ensure that the C.I. did not possess controlled substances. Officers provided the C.I. with purchase money and fitted the C.I. with audio and video monitoring equipment. Following the controlled purchases, the C.I. returned to the predetermined meeting locations and delivered a quantity of marijuana to the officers. The C.I. was monitored by officers during the purchases. The C.I. then delivered a quantity of marijuana to officers. On two occasions, Jason Coleman was personally observed by law enforcement officers leaving his residence, making a sale to the C.I. at the Kwik Sak Market, and returning to his residence. Because there was no information provided by the C.I., the C.I.'s veracity and basis of knowledge need not be established.

We conclude that the trial court did not err when it denied Defendant's motion to suppress. Accordingly, the judgment is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-7-